1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | | |
|---|---|---|
| CAROL V. WOODALL, | ) | Case No. CV 04-08209 (SH) |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

        This matter is before the Court for review of the decision by the Commissioner of
Social Security denying plaintiff's application for Disability Insurance Benefits under
Sections 216(I) and 223 of the Social Security Act.  Pursuant to 28 U.S.C. § 636(c), the
parties have consented that the case may be handled by the undersigned.  The action
arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the
pleadings and transcript of the record before the Commissioner.  The plaintiff and the
defendant have filed their pleadings, the defendant has filed the certified transcript of
record, and the parties have filed a joint stipulation.  After reviewing the matter, the Court
concludes that the decision of the Commissioner should be reversed and remanded.

On September 18, 2000, plaintiff Carol Woodall filed an application for a period of disability or Disability Insurance Benefits alleging an inability to work since November 17, 1997  (Administrative Record ["AR"] 316-18).  (An earlier application for disability benefits alleging an ability to work since April 16, 1997, filed on January 28, 1999, had been denied on June 26, 2000. [AR 19, 100-04].)  On July 24, 2003, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Social Security Act.  (AR 19-28).

Plaintiff makes three challenges to the ALJ's determination.  Plaintiff alleges that the ALJ erred (1) in relying on medical expert testimony that facially misconstrued the Regulations; (2) in rejecting the opinions of plaintiff's treating physicians, Dr. Hillel Sperling and Dr. Steven Nagelberg; and (3) in rejecting plaintiff's testimony.

Each of plaintiff's contentions will be addressed in turn.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ improperly relied on Dr. Samuel Landau, the medical expert at the administrative hearing.  According to plaintiff, Dr. Landau misunderstood the content of Listings for musculoskeletal impairments, because Listing 1.04(A) does not contain required elements of ineffective ambulation or the inability to perform fine and gross movements effectively.  Plaintiff further asserts that the ALJ improperly relied on Dr. Landau because Dr. Landau did not consider plaintiff's obesity.  In response, defendant argues that the ALJ properly relied on Dr. Landau's testimony that plaintiff's orthopedic condition did not meet or equal any of the Listings of Impairments.

Dr. Landau testified that since July 2000 plaintiff's medically determinable impairments were obesity, degenerative disc disease, degenerative arthritis of her entire spine, left shoulder and knee, and that plaintiff suffered from persistent symptoms of carpal tunnel syndrome although she had had bilateral carpal tunnel releases.  (AR 830).  However, Dr. Landau testified that plaintiff's conditions, individually or in combination,

did not meet or equal any of the Listings of Impairments because he could not find in the record objective evidence that plaintiff had ineffective ambulation or the inability to perform fine and gross movements effectively.  (Id.).

The ALJ found that plaintiff's impairments -- "moderate to marked obesity, degenerative joint and disc disease of the lumbar and cervicothoracic spine, osteoarthritis of the left shoulder and knees, status post left shoulder arthrosporic surgery, bilateral carpal syndrome, status post bilateral release" -- in combination were severe but not severe enough to meet or equal one of the Listings of Impairments.  (AR 22).

Listing 1.04 requires a disorder of the spine (such as osteoarthritis and degenerative disc disease) "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" accompanied by:

> "A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]"  20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.04(A).

On  November 15 and 20, 2000, Dr. Sperling (plaintiff's treating physician) found paracervical muscular spasm, tenderness and reduced range of motion in the cervical spine; parathoracic muscular spasm and tenderness in the thoracic spine; paralumbar spasm, tenderness in the posterior superior iliac and the sciatic notch, reduced range of motion, and positive straight leg raising in the lumbar spine; tenderness and a reduced range of motion in the left shoulder; positive Tinel's sign bilaterally and decreased sensation in the median nerve distribution of both hands; and tenderness of the right knee and left ankle.  Dr. Sperling diagnosed plaintiff with: cervical herniatic disc; lumbar herniatic disc; internal derangement of the right knee; sprain of the left ankle; and

3

bilateral carpal tunnel syndrome.  (AR 530-32, 541-44).  On March 19, April 25, July 19, and September 11, 2001, Dr. Sperling made essentially the same findings and diagnoses. (AR 567-68, 571-72, 622-23, 628-29; see also 703-04, 728-29).

On April 5, 2001, Dr. George Watkin (an agreed-upon examining physician) examined petitioner.  Dr. Watkin found no gross deformity or muscular spasm of the cervical spine, shoulders and upper extremities; paraspinal and trapezius tenderness and left shoulder and left wrist tenderness; decreased sensation over both thumbs; decreased range of motion in the lumbar spine; positive straight leg raising; and decreased sensation over the right leg.  Dr. Watkin diagnosed plaintiff with: sprain/strain of the cervical spine; "[s]tatus post left shoulder arthroscopy with debridement of slap tear, arthroscopy subacromial area with subacromial decompression, including subacromical bursectomy, resection coracoacromial ligament and anterior right acromioplasty, as well as arthroscopy Mumford procedure"; "[h]istory of bilateral carpal tunnel syndrome and left ulnar neuritis"; "[s]prain/strain of the thorocolumbar spine, superimposed on significant degenerative changes and multi level disc bulges"; and "[s]prain/strain of the right knee with chondromalcia patella."  (AR 579-92).

A MRI of the lumbar spine, performed on July 19, 2002, showed: disc dessications at multiple levels; mild narrowings of the neural foramina at L3-4 and L4-5; a 2mm broad-based posterior disc protrusion at L4-5; and moderate narrowings of the neural foramina and a 2.55 mm broad-based posterior disc/endplate complex at L5-S-1.  (AR 718-19).  A MRI of the cervical spine, performed on July 25, 2002, showed: a 2 mm central posterior disk protrusion and mild narrowing of the left neural foramen at C5-6; a 3 mm broad-based posterior and left posterolateral disk/endplate complex and moderate narrowing of the left neural foramen at C6-7; and moderate narrowing of the left neural foramen at C7-T1.  (AR 723-24).

Dr. Nagelberg (plaintiff's treating physician as of June 2002) found that plaintiff had tenderness and a decreased range of motion in the cervical spine and lumbar spine

and tenderness in the right knee, and diagnosed cervical radiculopathy, lumbar radiculopathy and right knee patellofemoral arthrosis.  (AR 735, 742, 760-61).

Here, plaintiff has not met her burden of showing that her impairments, individually or in combination, met or equaled Listing 1.04.  See Young v. Sullivan, 911 F.2d 180, 182-83 (9th Cir. 1990); Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  None of plaintiff's medical records indicated that plaintiff's spinal disorders resulted in the compromise of a nerve root or the spinal cord, or that there was evidence of nerve root compression.  (See AR 512-74).

Indeed, the record of a cervical spine MRI, performed on November 21, 2000, stated that plaintiff had "[m]ild cervical spondylosis at C5-C6 and C6-C7 without obvious neural compression."  (AR 555).  The opinion of Dr. Landau that plaintiff's impairments individually or in combination did not meet or equal the Listings, which was not inconsistent with the findings and diagnoses of plaintiff's treating physicians and the examining physician, constituted substantial evidence in support of the ALJ's finding that plaintiff's impairments did not meet or equal any of the Listings.

Plaintiff's argument that the ALJ improperly relied on Dr. Landau because Dr. Landau did not properly consider plaintiff's obesity is meritless.  As noted above, Dr. Landau specifically found that plaintiff had the impairment of obesity since July 2000. The ALJ clearly considered plaintiff's obesity (i.e., 5 feet 6 inches tall, 245 pounds, a mass body index of 39.5) when determining that her impairments did not meet or equal any of the Listings.  (AR 21-22).

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ improperly rejected the opinions of plaintiff's treating physicians that plaintiff was unable to perform substantial gainful activity.  Respondent argues that the ALJ properly found that the record did not support the treating physician's opinions.

A treating physician's opinion is entitled to greater weight than that of an examining physician. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); 20 C.F.R. § 416.927(d)(1). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, supra (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 n.7 (9th Cir. 1989)). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). "The [Commissioner] may disregard the treating physician's opinion whether or not that opinion is contradicted." Magallanes v. Bowen, supra (citing Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)). A treating physician's medical opinion unsupported by described medical findings, personal observations, or test results may be rejected. See Burkart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988).

A medical opinion is considered uncontroverted if all the underlying medical findings in the record of plaintiff's physical impairments are similar. Sprague v. Bowen, supra. "To reject the uncontroverted opinion of a claimant's physician, the [Commissioner] must present clear and convincing reasons for doing so." Magallanes v. Bowen, supra (citing Rodriguez, supra, 876 F.2d at 761-62); see also Morgan v. Apfel, 169 F.3d 595, 596 (9th Cir. 1999)("When a non-treating physician's opinion contradicts that of the treating physician—but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician—the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984).

In the instant case, Dr. Sperling stated that (since November 2000) in an eight-hour day, plaintiff could sit and stand/walk for only two hours and could lift and carry up to 5 pounds occasionally (and never more than 5 pounds), that plaintiff's pain and other

symptoms frequently interfere with her attention and concentration, that approximately every two hours plaintiff would need to take unscheduled rest breaks (for half an hour), that plaintiff would likely be absent from work more than three times a month, and that plaintiff could not do any pushing, pulling, kneeling, bending, stooping, repetitive gripping or grasping, or work in heights.  Dr. Sperling opined that (since November 2000) plaintiff was unable to perform any sustained work activities.  (See AR 703-09).

Dr. Nagelberg stated that (since June 2002) in an eight-hour day, plaintiff could sit for only four hours and stand/walk for only one hour, that plaintiff must get up and move around every ten to twenty minutes, that plaintiff could lift and carry up to 5 pounds frequently and up to 10 pounds occasions (and never more than 10 pounds), that plaintiff had moderate difficulties in grasping, turning, twisting and fine manipulation in the right hand, that plaintiff had marked difficulty in reaching in the right and left arms, that plaintiff's pain and symptoms frequently interfere with her attention and concentration, that two or three times a day plaintiff would have to take unscheduled rest breaks (for twenty to thirty minutes), that plaintiff likely would be absent from work more than three times a month, and that plaintiff could not do any pushing, pulling, kneeling, bending, stooping, gripping or grasping, or work in heights.  (See AR 760-767).

After noting Dr. Sperling's and Dr. Nagelberg's opinions, the ALJ stated: "These and other treating sources in the claimant's worker's compensation have indicated she is 'temporarily and totally' disabled, but these are of little value in this case since that term in a worker's compensation case denotes only that she has a compensable injury under that program, that she cannot perform the job she was performing and that she needs further medical treatment or evaluation."  (AR 23).  The ALJ then noted a dispute in plaintiff's worker's compensation case between plaintiff's treating physicians and the physicians for plaintiff's insurance carrier, which resulted in Dr. Watkins' examination and evaluation of plaintiff in April 2001.  (AR 24, 579-97).  The ALJ noted the impairments found by Dr. Watson (as discussed above) as well as Dr. Watson's

7

conclusion that plaintiff's condition was "permanent and stationary" (which the ALJ interpreted as "not likely to improve significantly with further treatment") (AR 24, 592-94), that Dr. Watson indicated that plaintiff's subjective complaints as to pain were moderate as to overhead reaching, slight as to her left elbow, slight to moderate as to her hands, slight to moderate as to her back, and slight to moderate as to her right knee (AR 24, 595), and that Dr. Watson found that plaintiff was not precluded from doing all work [as a result of her cervical spine], but was precluded from working at or above the shoulder level as to her left shoulder and from very repetitive gripping, grasping and fine manipulation and repetitive kneeling, squatting, crawling and climbing as to her right knee, and heavy work as to low back (AR 24, 596).  The ALJ noted that Dr. Watson's assessment was consistent with the (less-specific) assessment of the medical examiner [Dr. Metzer] who saw plaintiff in November 2000, and was consistent (with the exception of the manipulative limitations) with the March and August 2001 assessments by the State Agency medical consultants.  (AR 24, 504-08 [Dr. Metzer diagnosed early degenerative arthritis of the lumbar spine and found plaintiff could lift 20 to 25 pounds occasionally and 10 pounds frequently, stand and walk up to six hours and sit for six hours in an eight-hour day, with no limitation of her upper extremities]), 558-65, 598-99 [the medical consultants found that plaintiff could occasionally lift and carry 20 pounds and frequently lift 10 pounds, could stand/walk and sit for about 6 hours in an eight-hour workday), could do unlimited pushing and pulling, could occasionally climb, balance, stoop, kneel, crouch and crawl, and did not have manipulative limitations (except for overhead reaching on the left side).  The ALJ then stated:

> "I cannot give controlling weight to the treating source findings given the fact that they are involved in an ongoing claim for worker's compensation benefits and there is significant dispute among the examining physicians regarding the nature and severity of the claimant's medical problems.  I must give greater weight to the assessment of the medical expert at the hearing

since it [is] based on the record as a whole and well supported by the consistent findings of the agreed medical examiner in the worker's compensation case and the consultative orthopedic medical evaluation in the pending claim."  (AR 24).

Here, the ALJ provided clear and convincing reasons for rejecting Dr. Sperling's and Dr. Nagelbert's opinions.  See Magallanes v. Bowen, supra; Morgan v. Apfel, supra.

Moreover, the medical expert's opinions (AR 831-32 [Dr. Landau testified that he would impose the following limitations on plaintiff: standing and walking for two out of eight hours, 15 to 30 minutes at a time on a level surface; sitting for six out of eight hours (with normal breaks and the sit/stand option); lifting, carrying, pushing, pulling 10 pounds frequently and 20 pounds occasionally, without working above the shoulder level on the left side and no extreme neck motion; fine manipulation occasionally, without forceful gripping, grasping or twisting; and no kneeling, squatting, crawling, working at heights, or forceful operation of foot petals or controls on the right]), whom the ALJ found to be more credible, in addition to Dr. Watson's and Dr. Metzer's opinions, constituted substantial evidence in support of the ALJ's findings that plaintiff had the residual functional capacity to perform work and was not disabled.  See Morgan v. Apfel, supra.

**ISSUE NO. 3**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony about her limitations and excess pain.  In response, defendant argues that the ALJ properly discredited plaintiff's subjective complaints due to evidence of plaintiff's "malingering."  Defendant further argues that the ALJ provided clear and convincing reasons for discrediting plaintiff's subjective complaints.

In her disability report, plaintiff stated that injuries to her back, neck, right leg, upper extremities, arms, hands and many physical restrictions limited her ability to work,

and that her injuries caused her pain.  (AR 328).  In a pain questionnaire completed in October 2000, plaintiff stated that (since April 1997) she constantly suffered pain throughout her body.  (AR 342-45).  On April 30, 2001 (in another disability-related report), plaintiff stated that her condition had worsened -- she had constant pain in her neck and upper back, excruciating pain in her lower back, pain in her hands, elbows, shoulders, right knee, left leg, left knee and left ankle -- and that she had difficulty walking, sitting, standing and lying down and could not concentrate for very long.  (AR 356-57).

Plaintiff testified that in November 1997 she had to stop working (after two and a half months of light duty work, i.e., paperwork, following her job as a truck driver) because of her injuries.  (AR 826-27).  Plaintiff testified that since then she had not applied for work.  (AR 827-28).  Plaintiff testified she cannot work because of her back pain, neck pain, excruciating pain down her legs to her knees, and problems with her hand and arms.  (AR 828, 856).  Plaintiff testified that she wears a brace on each leg every day for two to three hours (more than that causes leg spasms and cramps).  (AR 828, 850).  Plaintiff testified she needs right knee surgery and she has used a cane to walk for a couple of years.  (AR 848-49).  Plaintiff testified she wears a brace on her right elbow.  (AR 850).  Plaintiff testified that to relieve her pain she takes Vicodin (she twice had been given an injection because she was taking too much Vicodin), Ibuprofen and regular aspirin,  uses a TENS unit, lies down during the day three or four times (she sometimes is unable to sleep at night, so she sleeps during the day for half an hour to two hours), and receives acupuncture three times a week.  (AR 850-51, 853-54, 856-57).  Plaintiff testified that during the day she did stretching, put hot wax on her hands, walked around, tried to cook her own meals (she had caused two fires when she dropped pans on the stove), and occasionally watched television.  (AR 854-55).  Plaintiff testified that her doctors had told her that losing weight would help her knees, but would not relieve her pain problem, and that she had tried to lose weight (which apparently was difficult for

her).  (AR 857-58).  Plaintiff testified that someone had driven her to the hearing, but that she usually drives herself to her doctor's appointments.  (AR 858).  Plaintiff testified that her worker's compensation claim still is pending.  (Id.).

The ALJ initially noted Dr. Landau's testimony to the effect that "lying down could help relieve pain, that [plaintiff] might still have pain even after lying down, and that the record appeared to show the [plaintiff] always had pain."  (AR 23, 846-47).  The ALJ then found credible Dr. Landau's conclusion "that the medical evidence of record showed that even with her apparent chronic pain she was able to work on a sustained, full-time basis, indicating limits consistent with a capacity for light work except for more than occasional standing and walking, any work above shoulder level with the left arm, more than occasional, but no extreme, neck motions, occasional fine manipulations, but no forceful gripping, grasping, or twisting, with the hands, and forceful operation of pedal controls with the right leg of more than ten pounds, or any kneeling, squatting, crawling, or work at heights."  (AR 23, 830-31).

The ALJ subsequently noted plaintiff's testimony that she lies down frequently because of pain, but also frequently drives prolonged periods for acupuncture and medical treatments.  The ALJ stated that such activities, which required "prolonged sitting and gripping," were consistent with the limitations articulated by Dr. Landau.  (AR 24).

The ALJ also noted that plaintiff had not been motivated to seek work, based on the fact that plaintiff "has continued to maintain her eligibility for worker's compensation benefits" and that fact that plaintiff "receiv[es] a subsidy in terms of her living arrangements."  The ALJ concluded, "Given the objective findings, the noted medical opinions, and indications of limited motivation, I cannot find the claimant's complaints wholly credible."  (Id.).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the pain.  Smolen v. Chater, 157

F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

As an initial matter, the Court rejects defendant's argument that the ALJ was not required to provide reasons for discrediting plaintiff's testimony because there was evidence that plaintiff was "malingering." There is no statement that the ALJ relied on such particular evidence  in finding that plaintiff's complaints were not "wholly credible."

Moreover, the ALJ did not set forth clear and convincing reasons to reject plaintiff's subjective complaints of excess pain. The ALJ's reliance on Dr. Landau's testimony concerning plaintiff's ability to work with various limitations [(or on the findings about plaintiff's ability to work by Dr. Watkins [AR 579-97], Dr. Metzer [504-08], or State Agency medical consultants [558-65, 598-99)]) did not support a finding that plaintiff's complaints were not "wholly credible." Dr. Landau [[or those medical providers]] did not contradict plaintiff's complaints of pain. Indeed, as noted by the ALJ, Dr. Landau acknowledged that the record showed that plaintiff always had pain. While the ALJ was allowed to consider inter alia inconsistencies between plaintiff's testimony and plaintiff's conduct in evaluating plaintiff's credibility, see Reddick, supra, Light, supra, the ALJ's reliance on plaintiff's alleged "prolonged sitting and gripping" during frequent drives for acupuncture and medical treatments was an insufficient basis to discredit plaintiff's testimony.  Nor did the ALJ address the other limitations asserted by plaintiff. In addition, the ALJ's claim that plaintiff was not "wholly credible" (based, in part, on her lack of motivation to seek work) was unconvincing. The fact that plaintiff

still was attempting to maintain her eligibility for worker's compensation benefits was not relevant (or, at best, only minimally relevant) to whether plaintiff was "motivated" to obtain work.  Plaintiff testified she could not work because of her pain, and plaintiff's treating physicians indicated that plaintiff was not able to work because of her limitations.  Finally, although the ALJ concluded that plaintiff's complaints were not "wholly credible," the ALJ failed to state the extent to which he found plaintiff's complaints "partially credible, as well as the impact of such findings."  Since the ALJ did not set forth, based on the entirety of the record, a clear and convincing reason for rejecting plaintiff's excess pain claims, the matter must be remanded for an explicit determination as to whether plaintiff was "malingering."

///

///

///

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g).

DATED: January 24, 2006

/S/
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE